IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

GLORY DAYS, INC.,

                            Plaintiff,

                                            Civ. Action No.
                                            5:06-CV-0036 (NAM/DEP)

        vs.

GLORY DAYS, LLC, d/b/a GLORY DAYS
FOOD & SPIRIT,

                            Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

DLA PIPER RUDNICK GRAY      CHRISTOPHER  STRONGONSKY, ESQ.
CARY US LLP
1251 Avenue of the Americas
New York, New York 10020-1104

FOR DEFENDANT:

[NONE]


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

### REPORT AND RECOMMENDATION

        Plaintiff Glory Days, Inc. ("Glory Days"), a Virginia corporation

engaged nationwide in the business of providing restaurant, bar and

catering services, has commenced this action against Glory Days, LLC,

d/b/a Glory Days Food & Spirits, a New York corporation which offers

similar services, alleging statutory and federal common law claims,

including, *inter alia*, trademark infringement under the Lanham Act, 15

U.S.C. § 1051 *et seq.*, and additionally asserting pendent New York state

law claims.  Plaintiff's claims arise from defendant's alleged use of the

protected marks GLORY DAYS GRILL and GLORY DAYS in connection

with its provision of restaurant, bar and catering services.  In its complaint

Glory Days seeks various relief, including a permanent injunction, treble

damages, costs, and attorneys' fees.

     At plaintiff's request, the defendant's default has been entered by

the clerk based upon its failure to appear and defend against the pending

claims.  I have since been assigned with the task of making

recommended findings in connection with plaintiff's application for a

permanent injunction, as well as regarding other forms of relief to be

awarded to the plaintiff.

I.     BACKGROUND[1]

---

     [1]     Unless otherwise noted the following recitation, which incorporates my findings of fact, is derived directly from the allegations of plaintiff's complaint.  By virtue of its default, defendant Glory Days, LLC is deemed to have admitted the well-pleaded factual allegations contained in plaintiff's complaint, except as to those relating to damages.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S. Ct. 1049 (1993); *see also DirecTV, Inc. v. Sheffield*, No. Civ.03-5738, 2005 WL 563108, at *2 (D. Minn. Mar. 8, 2005) (citing 10A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2688 (3d ed. 2004) and Fed. R. Civ. P. 8(d)).

Glory Days is a corporation organized under the common laws of the Commonwealth of Virginia, with a principal place of business located at 6100 Saddle Horn Drive, Fairfax, Virginia.  Glory Days operates from seventeen locations throughout Florida, Maryland and Virginia, providing bar, restaurant and catering services at its various places of business.

Glory Days is the owner of two federally registered marks, as evidenced by Trademark Registration Nos. 2,080,016 and 2,080,017, including GLORY DAYS GRILL and GLORY DAYS, respectively, for use in connection with its restaurant, bar, and catering services.  The mark GLORY DAYS GRILL was first utilized by the plaintiff in commerce on April 16, 1996; GLORY DAYS has been used by the plaintiff in interstate commerce since July 15, 1997.  Plaintiff's marks are highly distinctive, having become associated by the public with its restaurant, bar and catering services, and are generally regarded as indicative of the high quality and reputation of Glory Days and its restaurant, bar and catering services.

Defendant Glory Days, LLC is a New York limited liability corporation headquartered at 248 North Main St., Herkimer, New York 13350.  Since in or before July of 2002, without plaintiff's consent, defendant has been utilizing the name GLORY DAYS FOOD & SPIRITS

in connection with its restaurant, bar and catering services, which are similar to those provided by the plaintiff to its customers.  Defendant provides its services to many of the same customers as GLORY DAYS, and via the same channels of trade through which plaintiff operates and promotes its services under the protected marks GLORY DAYS GRILL and GLORY DAYS.  As such, defendant's use of the term GLORY DAYS in connection with its business is likely to cause confusion or misunderstanding on the part of current and potential customers and consumers as to whether there is an affiliation, connection or association between the parties, or certification by plaintiff as to the quality of defendant's goods or services.  Defendant's use of the term GLORY DAYS is also likely to cause confusion among consumers as to the origin of defendant's goods and services, and in particular whether they are in any way related to plaintiff's operations.

After discovering the infringing use of the name GLORY DAYS FOOD & SPIRITS, plaintiff attempted to communicate with the defendant in an effort to secure the voluntary discontinuance of use of that name in connection with defendant's business.  The first such communication came on July 28, 2005, when one of plaintiff's attorneys wrote to the defendant, providing notice of its protected rights to the marks GLORY

4

DAYS GRILL and GLORY DAYS and requesting that defendant cease all use of the term GLORY DAYS or any other similar phrase, going on to state plaintiff's position that the name utilized by the defendant in connection with its business was confusingly similar to plaintiff's protected marks.  Having had no response to that letter, plaintiff sent a follow-up communication on August 19, 2005, again through counsel, requesting a response and advising that absent any communication from the defendants, the plaintiff would explore "further options".  Those two attempts by the plaintiff to engage defendant in discussion regarding the matter were followed by an effort on the part of plaintiff's counsel to reach one of defendant's owners, Marc Derella, by telephone.  While that attorney left a message for Derella on September 30, 2005, that call was not returned.

Plaintiff's counsel made one final effort to resolve the matter, sending an additional letter to the defendant on November 8, 2005, and enclosing a draft copy of the complaint which was ultimately filed with this court.  Consistent with its earlier inaction, defendant once again failed to respond to this final, pre-suit communication.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on January 11, 2006.  Dkt. No. 1.  In

its complaint, Glory Days has set forth four causes of action, including 1) infringement of a federally registered trademark, in violation of section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114 (1)(a); 2) false designation of origin, under 15 U.S.C. § 1125(a); 3) trademark infringement and unfair competition, under federal common law; and 4) violation of N.Y. General Business Law § 349 *et seq.*, which protects against deceptive acts and business practices which result in injury to consumers. *Id.* Plaintiff's complaint seeks various relief, including treble damages, based upon the allegation that defendant's infringement was willful; a permanent injunction; and costs of the action, including a reasonable attorneys' fee.

A return of service filed by the plaintiff reflects that the summons and complaint were served upon the defendant on January 19, 2006. Dkt. No. 4. At plaintiff's request, based upon its failure to answer or otherwise properly appear in the action, defendant's default was entered by the clerk on March 13, 2006. Dkt. No. 6.

On April 5, 2006, plaintiff moved seeking the entry of default judgment. Dkt. No. 7. In its motion, plaintiff has abandoned its claim for damages, instead requesting only the entry of a permanent injunction and recovery of costs and attorneys' fees. *Id.* The matter has since been referred by Chief District Judge Norman A. Mordue to me for the issuance

of a report making recommended findings in connection with plaintiff's application for default judgment, pursuant to 28 U.S.C. § 636(b)(1)(B); *see also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Legal Effect of Defendant's Default

      The entry of a defendant's default carries with it significant legal consequences; chief among those is the establishment of liability on the claims asserted by the plaintiff.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *see also DirecTV, Inc. v. Arnold*, 392 F. Supp.2d 415, 416-17 (N.D.N.Y. 2005) (Munson, J.).  As an adjunct to this rule, all of the factual allegations of a well pleaded complaint, except those pertaining to the amount of damages to be recovered by the plaintiff, are taken as established in the event of a defendant's default.  *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Dunkin' Donuts Inc. v. Peter Romanofsky, Inc.*, No. CV-05-3200, 2006 WL 2433127, at *1 (E.D.N.Y. Aug. 8, 2006); *Arnold*, 392 F. Supp.2d at 416.  It is against this backdrop that plaintiff's request for relief must be measured.

7

B.    Permanent Injunction

Abandoning the claim for damages set forth in its complaint, plaintiff now seeks only the entry of a permanent injunction in order to protect its proprietary rights to the marks in question.  A permanent injunction may properly be entered on motion for default judgment, provided that the moving party establishes both entitlement to such relief based upon the claims asserted in its complaint and fulfillment of the usual prerequisites for the issuance of an injunction.  *Kingvision Pay-Per-View, Ltd. v. Batista*, No. CV 050614, 2005 WL 2999427, at *5 (E.D.N.Y. Oct. 6, 2005) (citing *Main Events/Monitor Productions v. Batista,* No. 96 CV 5089, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998)).

1.    Availability of Injunctive Relief

The availability of injunctive relief in this case is governed by section 34(a) of the Lanham Act, which empowers district courts to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable" in cases where a plaintiff establishes either infringement of a federally registered trademark, or a proven violation of 15 U.S.C. § 1125(a).  15 U.S.C. § 1116(a); *see Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp.2d 448, 459 (S.D.N.Y. 2005); *see also BIC Corp. v. Far Eastern Source Corp.*, No. 99 CIV.

11385, 2000 WL1855116, at *3 (S.D.N.Y. Dec. 19, 2000), *aff'd*, 23 Fed.

Appx. 36 (2d Cir. 2001) (unpublished).  Since defendant's liability for

trademark infringement, false designation of origin, and unfair competition

are established by virtue of its default, plaintiff has satisfied this first

element, demonstrating that it qualifies for the entry of a permanent

injunction under 34(a) of the Lanham Act.

2.  <u>Entitlement To Injunctive Relief</u>

The cornerstone of injunctive relief as an available, equitable

remedy is the avoidance of irreparable harm, for which there is no

adequate remedy at law to compensate the complaining party.  *DCH Auto*

*Group (USA) Inc. v. Fit You Best Automobile, Inc.*, No. CV-05-2973, 2006

WL 279055, at *9 (E.D.N.Y. Jan. 10, 2006); *Lorillard*, 378 F. Supp.2d at

459.  Accordingly, a plaintiff who is entitled by law to request such relief,

and who succeeds in establishing liability, is entitled to the entry of a

permanent injunction upon a showing that absent an injunction, it will likely

incur irreparable harm.  *Lorillard*, 378 F.Supp.2d at 459.  "In a trademark

case, irreparable injury is established where there is any likelihood that an

appreciable number of ordinarily prudent purchasers are likely to be

misled, or indeed simply confused, as to the source of the goods in

question." *Lobo Enters., Inc. v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir.

9

1987) (citations and internal quotation marks omitted); *see also Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005); *Brennan's Inc. v. Brennan's Restaurant, LLC.*, 360 F.3d 125, 129 (2d Cir. 2004); *Lorillard*, 378 F. Supp.2d at 459.

As can be seen, pivotal to plaintiff's request for injunctive relief is a showing of likelihood of confusion between its established and registered marks, and defendant's use of GLORY DAYS FOOD & SPIRITS in connection with its operation.  Analysis of likelihood of confusion in a contested case is ordinarily informed by a variety of factors which, in this circuit, have come to be known collectively under the rubric of the *Polaroid* test.  *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495-96 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S. Ct. 36 (1961); *see also Lorillard*, 378 F. Supp.2d at 455 (citing *Polaroid*).  In this case, however, it is unnecessary to perform the *Polaroid* calculus, since the likelihood of confusion is intuitively present, and in any event is both alleged in plaintiff's complaint, Dkt. No. 1, ¶¶ 14-15, 24, and established by virtue of defendant's default.  *See*, *e.g.*, *Quizno's Corp. v. Makda*, No. Civ.A. 3:01CV2094, 2002 WL 32157010, at *1 (N.D. Tex. June 6, 2002).  In its complaint plaintiff has alleged, for example, that defendant's actions in adopting and utilizing the name GLORY DAYS FOOD & SPIRITS in

connection with its restaurant, bar and catering services "are likely to confuse and mislead the public regarding the affiliation, the connection or association, certification or approval of Defendant's business activities."[2] Complaint (Dkt. No. 1) ¶ 37.

One remaining concern over whether the entry of injunctive relief is appropriate in this case is the lack of available information which would disclose whether defendant continues to violate plaintiff's statutory and common law rights. Based upon the record now before the court, one could reasonably infer that the last known infringement dates back to 2005. The failure of a plaintiff to make a showing of such ongoing infringement has led at least one court to reject a plaintiff's call for the inclusion of a permanent injunction, as part of a default judgment entered in a somewhat similar case. *See Peter Romanofsky, Inc.*, 2006 WL 2433127, at \*6.

Decisions from various courts, both within this circuit and elsewhere, reflect that a showing of ongoing infringement in a case of this nature is not invariably regarded as a necessary predicate to obtaining injunctive relief; often, the mere threat of continuing infringement will suffice to

---

[2]     Plaintiff's complaint goes on to allege that the injury to plaintiff resulting from defendant's actions "is and continues to be immediate and irreparable[,]" and that absent the entry of an injunction defendant's actions will lead plaintiff to suffer irreparable injury. Complaint (Dkt. No. 1) ¶¶ 39-40.

support the issuance of such relief.  Thus, for example, in *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, the court addressed claims brought by a watchmaker who sought to enjoin several competing jewelry manufacturers from selling a line of watches allegedly infringing upon plaintiff's marks and trade dress.  No. 01 Civ. 11295, 2003 WL 21056809, at *6 (S.D.N.Y. May 8, 2003).  In response to plaintiff's request for an injunction, defendant argued that because all allegedly infringing conduct had ceased, there was no longer any need for the entry of such relief.  *Id.* Firmly rejecting such a categorical approach, the court noted that defendant's agreement to stop infringing "'hardly suffices to ensure that the party will not, in the future, reverse course and resume its challenged activities,'" and thus entered the preliminary injunction sought by the plaintiff.  *Id.* at *6, *14-*15 (quoting *Lon Tai Shing Co., Ltd. v. Kotch + Lowy*, No. 90 Civ. 4464, 1991 WL 170734, at *38 (S.D.N.Y. June 20, 1991)); *see also Rosco, Inc. v. Mirror Lite Co.*, No. CV-96-5658, 2006 WL 2844400, at *4 (E.D.N.Y. Sept. 29, 2006) ("Cessation of production and sales is not in and of itself sufficient . . . to deny a permanent injunction[.]"); *Petmed Express, Inc. v. Medpets.Com, Inc.*, 336 F. Supp.2d 1213, 1223 (S.D. Fla. 2004); *PepsiCo, Inc. v. California Security Cans*, 238 F. Supp.2d 1172, 1177-78 (C.D. Cal. 2002); *Cf. Friends of the*

*Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189-94, 120 S. Ct. 693, 708-11 (2000) (request for injunctive relief not mooted by changed circumstances where situation was likely to recur in a setting making it capable of repetition, yet evading review).  As the Ninth Circuit has noted, when evaluating the competing equities and deciding whether to award injunctive relief despite evidence that a defendant's infringing conduct has effectively ended, "'[i]f [defendant] sincerely intend[s] not to infringe, the injunction harms [him] little; if [he does], it gives [plaintiff] substantial protection of its trademark[s].'"  *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997) (quoting *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986)).

The lack of evidence reflecting that defendant's violation of plaintiff's protected proprietary rights is ongoing thus does not necessarily obviate the need for the requested injunctive relief.  In any event, plaintiff's complaint alleges, *inter alia*, that "Defendant continues to use GLORY DAYS and to infringe intentionally Plaintiff's Marks despite receiving actual notice of plaintiff's incontestable prior rights in and to the Marks." Complaint (Dkt. No. 1) ¶ 19.  Similarly, the complaint avers that "Defendant has intentionally infringed, and will continue to intentionally infringe upon Plaintiff's Marks."  *Id.* ¶ 25.  These allegations, which must

be regarded as established in light of defendant's default, suffice to establish at least the possibility of ongoing infringement.

The case cited earlier, in which the court, finding no evidence of ongoing infringement, declined a request for the entry of injunctive relief is readily distinguishable from the circumstances of the instant case. *Romanofsky*, 2006 WL 2433127, at *6.  There, the evidence before the court revealed that defendant had ceased its operations altogether and abandoned the disputed franchises – conduct which, in the court's view, definitively eliminated any threat of further injury to the plaintiff.  *Id.*  The court's decision in *Romanofsky* draws support from other cases suggesting that denial of a permanent injunction is appropriate when the court is presented with persuasive evidence that no further infringement will occur.  *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed. Cir. 1988); *Rosco, Inc.*, 2006 WL 2844400, at *4 (citing *W.L. Gore*).  That principle has no applicability in this instance, however, since the record is completely devoid of any evidence suggesting that defendant's infringing conduct is neither ongoing, nor likely to recur in the future.

In sum, having found both entitlement on the part of plaintiff to a permanent injunction under the legal provisions giving rise to its claims,

and that it will likely incur irreparable harm in the absence of such relief, I recommend the entry of a permanent injunction as sought by the plaintiff.

### C.    Costs and Attorneys' Fees

The second component of plaintiff's request for relief consists of a request for an award of costs and attorneys' fees.  Urging statutory entitlement to such relief, plaintiff asks the court to award a total of $9,137.45 in costs and fees associated with its pursuit of the claims in the action.

Under the Lanham Act, a trial court is empowered to award costs of the action, "subject to the principles of equity[.]"  15 U.S.C. § 1117(a).  A court may also award attorneys' fees to a prevailing party in "exceptional cases[.]"  *Id.*  Fee shifting statutes such as section 1117(a) represent a significant departure from the general "American Rule," to the effect that a litigant ordinarily bears its own costs and attorneys' fees.  *See United States v. 110-118 Riverside Tenants Corp.*, 5 F.3d 645, 645 (2d Cir. 1995) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616 (1975)).

### 1.    Attorneys' Fees

In the context of trademark infringement and unfair competition, the term "exceptional case", which is not defined by statute, is generally

understood to include one involving proven fraud, bad faith or willful infringement. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003); *DCH Auto Group*, 2006 WL 279055, at *5; *Guess?, Inc. v. Gold Center Jewelry*, 997 F. Supp. 409, 412 (S.D.N.Y. 1998).  Such a showing, however, does not mandate an award of fees; the decision of whether to award fees in an exceptional case remains within the sound discretion of the trial court. *DCH Auto Group*, 2006 WL 279055, at *5.

Plaintiff's complaint in this action alleges that defendant's unlawful use of the mark GLORY DAYS was willful. *See*, *e.g.*, Complaint (Dkt. No. 1) ¶ 32. *See also id.* "Wherefore" clause ¶ 1(a).  Since the willfulness of the defendant's conduct is established by virtue of its default, plaintiff therefore qualifies for a finding that this represents an exceptional case, and consequently, for consideration of an award of attorneys' fees. *See Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp.2d 339, 364 (S.D.N.Y. 1998) ("[I]t is an abuse of discretion for a district court to fail to consider an award of attorney's fees in cases involving willful infringement.") (citations omitted); *see also Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995).

Even absent the allegations in plaintiff's complaint addressing willfulness, the court could infer such a level of intent by virtue of

16

defendant's failure to appear and defend in the action, in the face of

plaintiff's allegations of intentional adoption, for use in its business, of a

confusingly similar name to plaintiff's protected marks.  *See*, *e.g.*, *Fallaci*

*v. New Gazette Literacy Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983);

*see also Fitzgerald Publishing Co. v. Baylor Publishing Co., Inc.*, 807 F.2d

1110, 1115 (2d Cir. 1986).  Defendant's willful infringement is further

established by its continued infringement in the face of multiple,

unanswered communications from the plaintiff's legal representative

advising of its infringement claims.  *See Microsoft Corp. v. Compusource*

*Distributors, Inc.*, 115 F. Supp.2d 800, 808-09, 812 (E.D. Mich. 2000);

*Guess?*, 997 F. Supp. at 411-12.

     In view of plaintiff's establishment of willfulness, I recommend that

the court declare this to be an exceptional case and award attorneys' fees

as authorized under the Lanham Act.[3]  Such an award is appropriate

under that section when deliberate and willful conduct has been

established on the part of the defendant.  *Centaur Commc'ns, Ltd. v.*

---

[3]     Plaintiff's requests for attorneys' fees is also made under N.Y. General Business Law § 349.  That section authorizes a court, in its discretion, to award costs and attorneys' fees to a prevailing plaintiff.  *Independent Living Aids, Inc. v. Maxi-Aids, Inc.,* 25 F. Supp.2d 127, 131-32 (E.D.N.Y. 1998); *Vitabiotics, Ltd. v. Krupka*, 606 F. Supp. 779, 786 (E.D.N.Y. 1984).  In light of my finding of entitlement to attorneys' fees under the Lanham Act, I have not separately addressed the requirements for recovering attorneys' fees under section 349.

*A/S/M Commc'ns, Inc.*, 652 F. Supp. 1105, 1114-15 (S.D.N.Y.), *aff'd*, 830 F.2d 1217 (2d Cir. 1987).

In deciding the amount of attorneys' fees to award the court must look to the general principles which inform such a determination, particularly within this circuit.  The question of how much to award in costs and attorneys' fees is one which rests with the sound discretion of the court.  *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1183 (2d Cir. 1996).  In computing a reasonable attorneys' fee courts, including the Second Circuit, typically employ a two-step procedure.  *McKever v. Vondollen*, 681 F. Supp. 999, 1002 (N.D.N.Y. 1988) (Cholakis, J.).  *See also Luciano v. Olsten Corp.*, 925 F. Supp. 956, 961-62 (E.D.N.Y. 1996), *aff'd*, 109 F.3d 111 (2d Cir. 1997).  First, the court must establish a "lodestar" figure by multiplying the number of reasonably expended hours by the hourly rate customarily charged for similar litigation by attorneys of like skill in the area.  *Cruz v. Local Union No. 3 of the Int'l Brotherhood of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994); *Luciano,* 925 F. Supp. at 961-62 (citing, *inter alia*, *Cruz*).  The court in its discretion may then choose to adjust the lodestar figure, depending upon other factors such as novelty or complexity of the issues, the level of skills required to

perform the services, and the result achieved.[4]  This two step analysis is

based on the understanding that:

> [t]he most useful starting point for determining the
> amount of a reasonable fee is the number of hours
> reasonably expended on the litigation multiplied by
> a reasonable hourly rate.  This calculation provides
> an objective basis on which to make an initial
> estimate of the value of a lawyer's services.

*Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983).

In *Hensley*, the Supreme Court went on to note that in determining a

proper fee, the court should determine whether the plaintiff achieved "a

level of success that makes the hours reasonably expended a satisfactory

basis for making a fee award[.]"  *Id.* at 434, 103 S. Ct. at 1940.

In this case plaintiff seeks recovery of $8,224.50 in attorneys' fees in

connection with the services rendered by various attorneys and

paralegals, based upon a lodestar calculation and without enhancement.

Plaintiff's request can be broken down as follows:

| Name | Title | Hourly Rate | Number of Hours | Total |
|---|---|---|---|---|
| T. Zutic | Associate | $150.00 | 11.40 | $1,710.11 |

---

4        The twelve factors which courts have commonly articulated as potentially
relevant to the fee issue are set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488
F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v.
Bergeron*, 489 U.S. 87, 91-96, 109 S. Ct. 939, 943-45 (1989) and *Luciano,* 925 F.
Supp. at 962.  Because plaintiff does not seek enhancement of the lodestar amount,
those factors will not be recited.

| R. Compton | Associate | $120.00 | 10.20 | $1,224.00 |
| M. McCabe | Counsel | $210.00 | 22.05 | $4,630.50 |
| C. Farrelly | Paralegal | $80.00 | 8.25 | $660.00 |

That request is supported by the declaration of Christopher Strongosky,

outlining the qualifications of those individuals, and a summary derived

from contemporaneous time records, as required under *New York State

Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d

Cir. 1983).  *See* Strongosky Decl. (Dkt. No. 7) Exh. 1.

Having reviewed the entries in plaintiff's submissions, I find that the

time expended was both reasonable and necessary, in light of the nature

of plaintiff's claims and the work performed in this case.  I further find that

the hourly rates sought with respect to the professionals involved in this

case are similarly reasonable, and are consonant with this court's prior

views concerning billing rates to be applied.  *See generally Arbor Hill

Concerned Citizens Neighborhood Ass'n v. County of Albany*, No. 03-CV-

502, 2005 WL 670307, at *5 (N.D.N.Y. Mar. 22, 2005) (Homer, M.J.); *see

also Arnold*, 392 F. Supp.2d at 418 (citing *Arbor Hill)*.  I therefore

recommend that plaintiff's request for an award of attorneys' fees be

granted, and that plaintiff be awarded the sum of $8,224.50 as

compensation for the time expended in connection with this matter by

attorneys and paralegals engaged by the plaintiff.[5]

### 2.    Costs

In its application, plaintiff also seeks costs totaling $912.95 associated with the prosecution of this action, including the request for the entry of plaintiff's default.  Those costs have been itemized in plaintiff's application, and include the following:

| Costs | Amount |
|-------|--------|
| Delivery Services | $ 95.89 |
| Filing Fees | $325.00 |
| Service of Documents | $ 50.00 |
| Lexis Charges | $ 22.69 |
| Westlaw Charges | $344.22 |
| Photocopying | $ 75.15 |
| TOTAL: | $912.95 |

The court finds that plaintiff is also entitled to recover the costs sought, as a prevailing party in this action.[6]  15 U.S.C. § 1117(a) (in the event of a finding of a trademark violation, "the plaintiff shall be entitled,

---

[5]    It is well accepted, in this district and others, that services performed by paralegals may be compensated under a governing fee shifting statute.  *See*, *e.g.*, *Miltland v. Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993); *Travis v. Owego-Apalachin Sch. Dist.*, No. 90-CV-90, 1990 WL 136671, at *2 (N.D.N.Y. Sept. 21, 1990) (McAvoy, J.).

[6]    Some of the costs now sought are also potentially recoverable by the plaintiff under Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920.

subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover . . . the cost of the action."); *see also Independent Living Aids, Inc.*, 25 F. Supp.2d at 134.  Courts routinely award litigation costs to prevailing parties in cases brought under the Lanham Act.  *DCH Auto Group*, 2006 WL 279055, at *3.  The costs sought by the plaintiff fall into several categories, some of which are undoubtedly coverable, while others present closer questions.

Among the costs claimed are filing fees alleged to have been incurred in the amount of $325.00.  While such filing fees are plainly recoverable under Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920(1), *see DCH Auto Group*, 2006 WL 279055, at *4, the filing fee paid to initiate this action was $250.  Since plaintiff has offered no further itemization or explanation for the remaining $75 claimed, I recommend reduction of the amount awarded in connection with this portion of the cost application to $250.00.

Plaintiff also seeks recovery of $50.00, listed under the category "Service of Documents".  While plaintiff's papers do not itemize this amount or provide further detail, the court presumes that it relates to service of the summons and complaint upon the defendant and, finding that amount not to be patently unreasonable, will also recommend that

this sum be awarded to the plaintiff.

Plaintiff further seeks recovery of computerized research expenses incurred, in the total sum of $346.91.  Such costs, however, are typically treated by the court as in the nature of overhead expenses, to be compensated indirectly through the recovery of attorneys' fees.  *OCH Auto Group*, 2006 WL 279055, at *3-*4; *New York State Teamsters Conference Pension & Retirement Fund v. United Parcel Service, Inc.*, No. 5:98CV1902, 2004 WL 437474, at *6 (N.D.N.Y. Feb. 27, 2004) (Scullin, J.).  I therefore recommend against awarding such expenses to the plaintiff as part of its costs.

The remaining costs sought by plaintiff include delivery charges in the amount of $95.89, and duplicating costs totaling $75.15.  While postage and similar expenses are typically not regarded as taxable costs under 28 U.S.C. § 1920, *see*, *e.g.*, *EEOC v. Allied Systems, Inc.*, No. 1:97-CV-1396, 1999 U.S. Dist. LEXIS 8878, at *4 (N.D.N.Y. June 9, 1999) (McAvoy, C.J.) *Cleveland v. North Am. Van Lines, Inc.,* 154 F.R.D. 37, 38-39 (N.D.N.Y. 1994) (Scullin, J.);, they are recoverable under a fee shifting statute such as that invoked in this case.  *New York State Teamsters*, 2004 WL 437474, at *6.

Based upon the foregoing, I recommend that plaintiff's request for

reimbursement of costs be granted to the extent of $471.04.

IV.    SUMMARY AND RECOMMENDATION

In light of defendant's default, plaintiff has established the allegations contained within its complaint related to the issues of liability including, pertinently, their ownership of protected federally registered marks GLORY DAYS GRILL and GLORY DAYS, as well as defendant's infringement of those marks through the adoption of a confusingly similar mark, GLORY DAYS FOOD & SPIRITS, for services that are the same as those offered by the plaintiff.  In light of plaintiff's allegations that defendant's infringing conduct is ongoing, and the complete absence of evidence convincingly establishing that future infringement will not occur, plaintiff is entitled to a permanent injunction.  Plaintiff has also established that defendant's infringement was willful, based both upon unanswered allegations within the complaint and inferences to be drawn from defendant's failure to defend, and additionally through their continued use of the infringing mark after having been placed upon notice of plaintiff's claims.  Plaintiff is therefore additionally entitled to recover not only its costs, but additionally a reasonable attorneys' fee.  It is therefore hereby

RECOMMENDED the court enter a permanent injunction, in the form of that sought by the plaintiff, prohibiting defendant from continuing

24

its infringing activities, and additionally that plaintiff be awarded costs, including a reasonable attorneys' fee in the amount of $8,224.50 and $471.04 in other costs, for a total award of $8,695.54 and that judgment be entered in plaintiff's favor awarding such relief.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e) and 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993);

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties electronically.

David E. Peebles
U.S. Magistrate Judge

Dated:   February 8,  2007
         Syracuse, NY

G:\Civil\2006\06-CV-0036\rep-rec.wpd